[Cite as *Gray v. Petronelli*, 2017-Ohio-2601.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| KAREN GRAY, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0030** |
| DONALD PETRONELLI, | : | |
| Defendant, | : | |
| PETRONELLI DESIGN & CONSTRUCTION INC., | : | |
| | : | |
| Defendant-Appellant. | | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2003 CV 00815.

Judgment: Affirmed.

*Thomas J. Wilson*, Comstock, Springer & Wilson Co., L.P.A., 100 Federal Plaza East, Suite 926, Youngstown, OH 44503-1811 (For Plaintiff-Appellee).

*Randil J. Rudloff*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Petronelli Design & Construction Inc. ("PDC"), appeals from a judgment of the Trumbull County Court of Common Pleas, which modified and adopted the magistrate's decision and awarded PDC a judgment in the amount of $6,323.08.

The case arose from a residential construction contract between PDC and appellee, Karen Gray, and her husband, James Gray.

{¶2} Construction began on May 21, 2002. Three different construction contracts were executed: September 1, 2001; April 1, 2002; and September 6, 2002. These contracts were based on architectural plans submitted by David Rockman. The final contract refers to Rockman's revised plans of April 21, 2002. The April 21 Rockman plans were acknowledged with a handwritten notation by PDC on May 20, 2002, one day prior to the start of construction.

{¶3} The contract was divided into "allowances" (i.e., items the Grays were responsible for paying directly to vendors themselves) and "fixed costs" (i.e., the items PDC would pay for and for which the Grays would provide reimbursement through bank draws). The "fixed costs" included, inter alia, various items of construction jointly referred to in the contract as the "Petronelli Package." The parties also agreed that any changes to the contract involving extra costs would require a written and signed change order. The final contract provided for $229,382 in "fixed costs" and $3,375 for "allowances."

{¶4} The Grays eventually terminated PDC from the construction project after significant work had been performed, and they hired other tradesmen to complete the home. The Grays had paid PDC a total of $158,152.

{¶5} On March 31, 2003, Ms. Gray filed a complaint against PDC and Donald Petronelli, individually, asserting causes of action for breach of contract and fraud. She filed a first amended complaint on July 15, 2003, adding a cause of action for slander of title. The trial court granted a motion filed by defendants to join Mr. Gray as an

2

involuntary plaintiff. The Grays subsequently filed a second amended complaint and an answer to the counterclaim.

{¶6} The Grays alleged PDC breached the contract by failing to comply with the terms of the contract and performing in an unworkmanlike manner. Specifically, they alleged the following items of faulty work: PDC did not follow the April 21 Rockman plans to use 13 courses of block in the basement, rather than 12, which resulted in an exposed, low-hanging steel I-beam over the basement stairs; the kitchen window does not open properly; the balcony floor leaks as a result of poor installation; and water began seeping into the basement within two years of construction.

{¶7} The Grays also claimed they paid other tradesmen to complete the following items not finished by PDC before the contract was terminated: electrical work; carpentry work; maple trim and materials; gutters and downspouts; washed gravel; overhead garage door; underlayment in tile areas; dumpsters; stair system and installation; garage steps; and lot clearing.

{¶8} The Grays further alleged they were entitled to a reduction of the contract price because certain written change orders resulted in reductions in the "fixed cost" portion of the contract.

{¶9} Defendants filed an answer and a counterclaim for money due on the contract and foreclosure on a mechanic's lien they had filed against the property. Defendants also alleged causes of action for fraud and defamation.

{¶10} Prior to a scheduled jury trial, on December 17, 2004, the case was stayed due to Mr. Gray filing for Chapter 13 bankruptcy status. On October 4, 2010, the case was returned to the trial court's active docket. The matter was referred to the

3

magistrate for a trial to the court, which began, following numerous continuances, on December 29, 2014. Prior to trial, Mr. Gray was removed as an involuntary plaintiff due to a bankruptcy discharge. Additionally, following Ms. Gray's case-in-chief, Donald Petronelli was dismissed as an individual defendant. The sole remaining parties were Plaintiff Karen Gray and Defendant PDC.

**{¶11}** The magistrate issued a decision, with findings of fact and conclusions of law, on September 1, 2015. The magistrate found PDC breached the contract by installing 12 courses of basement block, rather than 13; not paying for the maple trim and materials as required under the contract; failing to install a subfloor in the tile areas; and failing to install the stair system. The magistrate found PDC owed Ms. Gray damages in the amount of $54,799.92: $5,000 for diminution in value due to the exposed I-beam and $49,799.92 for the cost to complete the project.

**{¶12}** The magistrate did not find that Ms. Gray breached the contract, but did award PDC damages on a quantum meruit basis as a result of work and materials for which it had not been reimbursed. The magistrate stated: "Petronelli seeks payment for the balance due under the contract. However, the Court has previously found herein that Petronelli breached the contract first by refusing to provide the maple trim and casings which were part of the Petronelli Package. However, Petronelli is still entitled to payment for the work performed." Using the $49,799.92 amount owed to Ms. Gray for the cost to complete the project, the magistrate found the value of the work performed by PDC was $170,101.08, of which Ms. Gray had already paid $158,152.00. Thus, PDC was entitled to $11,949.08 minus the $5,000 for faulty workmanship. This left a $6,949.08 award in favor of PDC.

4

{¶13} The magistrate further found that Ms. Gray's claims for fraud and slander of title and PDC's claims for fraud and defamation were not supported by any evidence at trial.

{¶14} Both parties filed objections to the magistrate's decision. The trial court entered its order modifying and adopting the magistrate's decision on March 3, 2016. The trial court found merit with only one of the objections: the amount of written change orders that reduced the contract price was not properly deducted from the "fixed costs" portion. Ms. Gray was thus entitled to an additional credit in the amount of $626, which reduced PDC's award to $6,323.08.

{¶15} Regarding the mechanic's lien filed by PDC, the trial court adopted the magistrate's recommendation and held it "is a good and valid lien upon the Gray real estate only as to the amount awarded to Petronelli herein; $6,323.08. As to the demand for foreclosure of the mechanic's lien, the Court finds Petronelli has not filed the appropriate title reports necessary to commence such foreclosure."

{¶16} PDC appealed from this order and asserts four assignments of error for our review.

{¶17} Its first assignment of error states:

> The court erred in failing to award PDC the contract price of $232,757.00, plus change orders of $3,970.00, plus excess allowance expenditures of $1,205.00, for a total of $237,932.00, less payments made by appellee of $158,152.00 and less appellee's cost to complete the contract of $49,799.92, leaving a net due PDC of $29,980.08.

{¶18} Under its first assignment of error, PDC's first argument is that "the Magistrate did not use the correct determination of damages in arriving at her decision."

5

This is a question of law, which we review de novo. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm. of Ohio*, 76 Ohio St.3d 521, 523 (1996).

{¶19} PDC asserts "[t]he correct calculation of Plaintiff's damages is the total contract price with extras and allowances ($237,932.00), minus the payments made by Plaintiff to PDC ($158,152.00), minus the costs to Plaintiff to complete the work PDC was to do ($49,799.92), leaving a balance due PDC of $29,980.08." We do not agree this formula is appropriate for the case sub judice.

{¶20} "The general measure of damages for breach of contract is the amount necessary to place the non-breaching party in the position he or she would have been had the breaching party fully performed under the contract." *W & W Dev. Co. v. Hedrick*, 8th Dist. Cuyahoga No. 73965, 1999 WL 219896, *7 (Apr. 15, 1999), citing *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159 (1976). In a construction contract, "the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract." *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148 Ohio App.3d 53, 59 (10th Dist.2002), citing *Sites v. Moore*, 79 Ohio App.3d 694 (1992).

{¶21} "[A] breaching party is not entitled to collect damages from a non-breaching party." *Hedrick*, *supra*, at *12, citing *Sites*, *supra*, at 701. However, a non-breaching party is also not entitled to receive more than she would have absent the breach. *James v. Sky Bank*, 11th Dist. Trumbull No. 2010-T-0116, 2012-Ohio-3883, ¶32 (citation omitted). Thus, "where the work of a defaulting contractor has contributed substantial value to the other contracting party's property, the defaulting party is entitled to recover the value of his work and materials on a quantum meruit basis, the recovery

6

being reduced to the extent of damage the breach may have caused the other party." *Hedrick*, *supra*, at *12, citing *Murray v. Marbro Builders., Inc.*, 53 Ohio App.2d 1 (1977); *see also Auto-Owners Ins. Co. v. Wheatley*, 11th Dist. Trumbull No. 2004-T-0043, 2005-Ohio-4650, ¶20-22. This is referred to as quasi-contractual relief and is provided to prevent unjust enrichment to the non-breaching party. *See Caras v. Green & Green*, 2d Dist. Montgomery Nos. 14943, 15089, 1996 WL 407861, *3 (June 28, 1996) (citations omitted).

**{¶22}** Here, the magistrate determined PDC breached the construction contract and was thus not entitled to recover under the contract. Further (and contrary to certain statements made by the parties on appeal), the magistrate did *not* determine that Ms. Gray was in breach. Rather, the magistrate held that although PDC breached, it was nevertheless entitled to quantum meruit relief for work and materials that benefitted Ms. Gray's property.

**{¶23}** The magistrate thus correctly applied, and the trial court adopted, the following measurement of damages: the amount necessary to place the house in the condition contemplated by the parties at the time they entered into the contract (i.e., the cost to complete the construction plus any diminution in value caused by PDC's breach) minus the value of PDC's work and materials for which PDC had not yet been compensated (i.e., a quantum meruit offset).

**{¶24}** Appellant's argument regarding the measurement of damages is not well taken.

**{¶25}** PDC further argues certain cost-to-complete portions of the magistrate's final damages award were not supported by the evidence and that the magistrate did

7

not properly apportion certain "credits" between the parties because it "did not understand the distinction between 'fixed costs' and 'allowances'" and "did not understand how allowances are treated in a construction contract." Specifically, PDC asserts the following: (1) the maple trim material and tile underlayment were part of the Petronelli Package, not the fixed costs; (2) Ms. Gray did not present sufficient evidence to show the value of the finish carpentry work; and (3) PDC was entitled to $1,205 in excess allowance expenses for utility installation.

**{¶26}** "An appellant bears the burden of affirmatively demonstrating error on appeal." *Harris v. Nome,* 9th Dist. Summit No. 21071, 2002-Ohio-6994, ¶14; *see also Concord Twp. Trustees v. Hazelwood Builders* (Mar. 23, 2001), 11th Dist. Lake No. 2000-L-040, 2001 WL 285822, *2 (Mar.23, 2001). An appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7); *see also Craft v. Edwards*, 11th Dist. Ashtabula No. 2007-A-0095, 2008-Ohio-4971, ¶28. "It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error." *Harris*, *supra*, at ¶15, citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996).

**{¶27}** Here, PDC has not cited to the record or to any case law in support of its argument that the magistrate did not understand "fixed costs" and "allowances" in a construction contract. A review of PDC's objections to the magistrate's decision reveals it provided no citations to authorities, statutes, or parts of the record for this exact

8

argument at that time. On authority of App.R. 16(A)(7), we decline to scour the voluminous record on behalf of an appellant who neglected its own duty.

{¶28} We additionally note that PDC's assertion that the maple trim material and tile underlayment were part of the Petronelli Package, not the fixed costs, is actually reflected in the magistrate's decision. The magistrate specifically stated: "the Court finds the arch-top window casings were included in the Petronelli Package where it listed the B109-B209 maple trim"; "[t]he contract provided for the inclusion of one-half inch underlayment in the tile areas as part of the Petronelli Package."

{¶29} Finally, PDC's assertion that the amount of $12,000 awarded for the cost to complete the finish carpentry work was not supported by sufficient evidence is misleading. In its brief, PDC states the magistrate found "there was no explanation for the increase in price paid to Creed as opposed to the Petronelli quoted contractual price of $10,400." Ms. Gray initially sought $23,260 for the finish carpentry work. The magistrate indeed found there was no explanation for the increase in price from $10,400 to $23,260. The magistrate did find, however, an evidentiary explanation for the increase in price from the Petronelli quote of $10,400 to the $12,000 amount paid to Creed for the same work.

{¶30} PDC's arguments with regard to certain costs to complete the construction are not well taken.

{¶31} Appellant's first assignment of error is without merit.

{¶32} Appellant's third assignment of error states:

{¶33} "The court erred in awarding appellee the sum of $5,000.00 in damages for alleged diminution in value of the residence due to the placement of a support beam

9

without any evidence as to the value of the residence without the alleged defect and with the alleged defect."

**{¶34}** PDC argues the $5,000 award for diminution in value was in error because the placement of the support beam was not a breach of contract and Ms. Gray did not offer any evidence as to the cost to correct the alleged defect.

**{¶35}** We review this factual challenge to determine whether the magistrate's decision was against the manifest weight of the evidence. *Shelly Materials, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Portage No. 2013-P-0016, 2013-Ohio-5654, ¶30 (citation omitted). Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) (emphasis deleted).

**{¶36}** The magistrate found the final contract provided for the use of 12 courses of basement block. The magistrate also found the April 21 building plans referenced in the contract and provided to PDC prior to the commencement of construction called for 13 courses of basement block. Nevertheless, PDC installed only 12 courses of block. The magistrate held this was a breach of contract and constituted faulty workmanship.

**{¶37}** PDC argues the use of 12 courses of block was not a breach of the contract but has not specifically assigned this as error. The assigned error only relates to the magistrate's assessment of damages. In any event, the argument relating to breach is not well taken, as PDC has again failed to comply with App.R. 16(A)(7) in support of this contention. *See Harris, supra*, at ¶15, citing *Kremer, supra*, at 60.

**{¶38}** The magistrate found this breach left the property with an exposed I-beam, which is unsightly and is a hazard for everyone over 6'0" descending the basement stairs. Furthermore, the magistrate found there is no available remedy to fix or remove the I-beam and that it is permanently exposed. The magistrate then stated that "Gray, as the homeowner, estimated the exposed I-beam reduces the value of the home by approximately $5000." The magistrate found this estimation was reasonable and awarded the same as damages for PDC's faulty workmanship.

**{¶39}** PDC argues this award was in error because the only evidence Ms. Gray provided to support a finding that the defect reduced the property's value by $5,000 was her husband's opinion testimony.

**{¶40}** "Ohio courts have long recognized what has come to be known as the 'owner-opinion rule.'" *Cincinnati v. Banks*, 143 Ohio App.3d 272, 291 (1st Dist.2001).

> Under the owner-opinion rule, an owner of real property, by virtue of his ownership and without qualification as an expert, is competent to testify to his property's fair market value. * * * The rule is based on the presumption that 'the owner of real estate * * * possesses sufficient acquaintance with it to estimate the value of the property, and his estimate is therefore received although his knowledge on the subject is not such as would qualify him to testify if he were not the owner.'

*Id.*, quoting *Smith v. Padgett*, 32 Ohio St.3d 344, 347 (1987), citing *Morris v. Huber*, 15 Ohio L. Abs. 71, 73 (1933).

**{¶41}** Contrary to PDC's position on appeal, the owner-opinion rule has been applied to permit a homeowner to testify regarding the diminution in value of his or her home due to a defect or injury to the property. *See, e.g.*, *Greig v. Wallick*, 5th Dist. Tuscarawas No. 2010AP090036, 2012-Ohio-77, ¶72-79; *Ohio Power Co. v. Ogle*, 5th Dist. Hocking No. 09CA1/09AP1, 2009-Ohio-5953, ¶25, quoting *Fox v. Williams*, 4th

11

Dist. Lawrence No. 95 CA 38, 1996 WL 292046, *2 (May 28, 1996) ("'In the context of establishing the market value differential, the "owner-opinion rule" permits appellee to offer his opinion of the value of the property after the injury.'").

**{¶42}** Here, Ms. Gray's husband testified as to the diminution in value of the property due to the faulty placement of the I-beam above the basement stairs. The issue of his credibility was a matter for the magistrate to decide as the trier of fact. The magistrate clearly found his testimony credible. Further, PDC has not directed us to any conflicting evidence on the matter nor do we find any conflicting testimony in a review of the transcripts. As a result, the $5,000 damages award for diminution in value was not against the manifest weight of the evidence.

**{¶43}** PDC also maintains in its reply brief on appeal that Mr. Gray's testimony should not have been admitted over objection because he was not a party to the final contract and is not an owner of the lot on which the new construction is situated. Whether he was an owner at the relevant time is not clear from the record before us. In addition, the admission of this testimony has not been assigned as an error in this appeal—again, only the calculation of the diminution-in-value award has been assigned as error. Thus, we cannot say the magistrate erred in reaching the $5,000 conclusion as to diminution in value.

**{¶44}** Appellant's third assignment of error is without merit.

**{¶45}** We next consider appellant's second assignment of error:

**{¶46}** "The court erred in failing to order foreclosure of PDC's properly filed and valid mechanic's lien on the basis that PDC had not filed the requisite judicial title report

12

required by Local Rule 21.01 where the transcript of the docket and the court file show that the requisite judicial title report was filed on 10/29/03 and again on 11/21/03."

**{¶47}** PDC argues the trial court erred in denying its demand to foreclose on its good and valid mechanic's lien on Ms. Gray's property because it filed the requisite title reports.

**{¶48}** R.C. 2329.191 provides that the preliminary report must be filed within 14 days after filing the pleadings requesting relief. "The purpose of the final report is to update the state of the record title to the property at issue." *TPI Asset Mgmt., LLC v. Ealey*, 10th Dist. Franklin No. 14AP-525, 2015-Ohio-740, ¶4. In addition, the statute requires the preliminary judicial report to be effective "within thirty days prior to the filing of the complaint or other pleading requesting a judicial sale[.]" R.C. 2329.191, however, did not become effective until September 11, 2008—five years after the commencement of this case. Prior to the enactment of R.C. 2329.191, Loc.R. 21.01 and Loc.R. 21.03 of the Trumbull County Court of Common Pleas provided for time limitations similar to those in the current statute.

**{¶49}** The record reflects that PDC filed its counterclaim, including a demand for foreclosure, on September 9, 2003. A judicial title report was entered into the record on October 29, 2003, and again on November 21, 2003, this time with a notice of filing from appellant's attorney. The magistrate found, and the trial court adopted, that PDC did not file "the *appropriate* title reports necessary to commence such foreclosure" (emphasis added). PDC has established that title reports were filed in this case. The trial court held, for a reason not clear in the record before us, that the title reports were not appropriate. PDC has not provided this court with reasons why its title reports were

13

timely or otherwise in accordance with the local rules in effect at the time PDC filed these reports. As a result, PDC has not met its burden on appeal to demonstrate error on the part of the trial court.

{¶50} Appellant's second assignment of error is without merit.

{¶51} Finally, appellant's fourth assignment of error asserts:

{¶52} "The court erred in not awarding PDC interest at the statutory rate from March 2003 on the amount of the judgment."

{¶53} PDC asserts the trial court erred by not awarding it prejudgment interest at the statutory rate upon the money the court found Ms. Gray owed to PDC for work and materials provided. Ms. Gray argues that neither the magistrate nor the trial court addressed the need for prejudgment interest, thus there is no way for this court to determine whether the trial court abused its discretion. In its objection to the magistrate's decision, however, PDC specifically noted the magistrate should modify the decision to include interest at the statutory rate. Additionally, we do not review a decision to award prejudgment interest in this type of case for an abuse of discretion.

{¶54} An award of prejudgment interest on a breach of contract claim is governed by R.C. 1343.03(A), which provides, in pertinent part:

> [W]hen money becomes due and payable upon any * * * instrument of writing * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to [R.C. 5703.47], unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶55} "'R.C. 1343.03(A) automatically bestows a right to statutory interest as a matter of law on a judgment, and does not leave any discretion to the trial court to deny

14

such interest.'" *Marion Plaza, Inc. v. 700 Block, LLC*, 7th Dist. Mahoning No. 09 MA 113, 2010-Ohio-1539, ¶13, quoting *Cafaro Northwest Partnership v. White*, 124 Ohio App.3d 605, 608 (7th Dist.1997). Thus, whether a party is entitled to an award of prejudgment interest pursuant to R.C. 1343.03(A) is a question of law subject to de novo review. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶67, citing *Marion Plaza*, *supra*. The only matter within a trial court's discretion is the date upon which the prejudgment interest should begin to accrue. *Desai*, *supra*, at ¶32.

{¶56} "[P]rejudgment interest does not punish the party responsible for the underlying damages * * *, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117 (1995) (citations omitted). "'By the explicit terms of R.C. 1343.03(A), prejudgment interest is limited to those contracts that provide for a payment of money that the breaching party failed to pay.'" *Jack F. Neff Sand & Gravel, supra*, at ¶68, quoting *RPM, Inc. v. Oatey Co.,* 9th Dist. Medina Nos. 3282-M & 3289-M, 2005-Ohio-1280, ¶64.

{¶57} Here, the magistrate found, and the trial court held, that PDC was in breach, not Ms. Gray, and that PDC was not entitled to recover under the contract. Thus, the trial court determined PDC was not the aggrieved party in this case. Ms. Gray's performance was thus excused as a result of PDC's breach, but a monetary award was given to PDC for work performed by PDC based on quantum meruit. Further, under the terms of the contract, PDC was never obligated to pay Ms. Gray an

15

amount of money it failed to pay; rather, it was obligated to provide a service. Under the circumstances of this case, PDC is not entitled to prejudgment interest on the amount awarded to PDC quantum meruit.

{¶58} Appellant's fourth assignment of error is without merit.

{¶59} The judgment of the Trumbull County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.