**[Cite as *Le v. Li*, 2019-Ohio-5269.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

THANH DINH LE                           :
                                        :
        Plaintiff-Appellant             :    Appellate Case No. 28274
                                        :
v.                                      :    Trial Court Case No. 2015-CV-2837
                                        :
SHAN GUI LI, et al.                     :    (Civil Appeal from
                                        :    Common Pleas Court)
        Defendants-Appellees           :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of December, 2019.

. . . . . . . . . . .

KEVIN A. BOWMAN, Atty. Reg. No. 0068223, 130 West Second Street, Suite 900, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

MICHAEL WOLOSHIN, Atty. Reg. No. 0096420, 530 York Street, Newport, Kentucky 41071
        Attorney for Defendants-Appellees

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant, Thanh Dinh Le, appeals from the trial court's judgment of December 24, 2018, in which the court adopted a magistrate's decision that had been entered on August 22, 2018. As the magistrate recommended, the court granted judgment in Le's favor on his claims for breach of contract against Defendants-appellees, Shan Gui Li and Chinh Van Luong; denied Le's claim for declaratory judgment against Appellees; and entered judgment in Appellees' favor on their joint counterclaim for breach of contract against Le.[1] Raising two assignments of error, Le argues that the court erred by awarding damages to Appellees on their counterclaim, and by refusing to award him the full amount of damages he sought on his claims for breach of contract. For the following reasons, we find that the court did not err, and its judgment of December 24, 2018, is therefore affirmed.

## I. Facts and Procedural History

**{¶ 2}** In 2006, Le and Appellees became interested in purchasing the gas station and convenience store located at 6430 Springfield-Xenia Road in Springfield, along with the corresponding parcel of real property. The gas station, the convenience store and the land were owned at the time by LVH, Inc., which held a liquor license in connection with the store. Apparently with their prospective purchase in mind, Le and Appellees incorporated LSV Company, Ltd. ("LSV") on or about July 24, 2006.

**{¶ 3}** On September 5, 2006, LSV entered into a contract with LVH, Inc. whereby

---

[1] The briefs indicate that Appellant's surname is Le. Appellant's Brief 2, 5-10, 12-13 and 15-16; Appellees' Brief 1; Appellant's Reply Brief 1-4 and 6. We refer to Appellant likewise in this opinion.

the latter allowed LSV to manage the gas station and the store (together, the "Business") in exchange for a payment of $52,000, plus the cost of the store's existing inventory, and the assumption of several other obligations. The two entities were also parties to an independent agreement in which LSV's payment of $52,000 was to be credited against the purchase price for the land and the Business. Subsequently, LSV delegated its management responsibility to a corporation formed by Appellees, Union Market Two, Inc. ("Union Market Two").[2]

{¶ 4} In turn, Union Market Two subsequently delegated management responsibility to Le in the "Management Agreement," a contract executed on or about June 26, 2007, by Shan Gui Li, who signed on behalf of Union Market Two, and by Le, who signed on behalf of "VLS Company, LLC."[3] Le agreed to "be fully responsible for the operation of said business in accordance with all applicable federal, state and local laws," and to indemnify Union Market Two against "all claims, demands and causes of action for the violations [sic] of any such laws." Union Market Two agreed that it would

---

[2] Appellees incorporated Union Market Two on February 14, 2007. LSV's delegation of management responsibility was apparently informal, but regardless, the parties did not enter a written agreement into the record. Similarly, the date on which LSV delegated its management responsibility to Union Market Two cannot be ascertained from the record, though the magistrate determined from the parties' trial testimony that the delegation occurred "at some point between September 5, 2006[,] and July 1, 2007." Magistrate's Trial Decision 3, Aug. 22, 2018.

[3] The magistrate stated that "VLS Company, LLC" is an "entity that was never formally created under the laws of the State of Ohio." Magistrate's Trial Decision 4. Assuming that VLS Company, LLC never existed as a matter of law, Union Market Two effectively delegated management responsibility to Le himself as a sole proprietor. The Ohio Secretary of State's website, on the other hand, lists VLS Company, LLC, Entity No. 1628571, as a currently active, domestic limited liability corporation that was incorporated on June 9, 2006, by Thanh Le.

"remain solely responsibl[e]" for "any bills, pending cause[s] of action or claim[s] that [might] have arisen prior to the date of [the Management] Agreement['s]" execution, and that as compensation for his services, Le would "receive the entire profits" generated by the Business during the term of the agreement.

{¶ 5} Later, on an unspecified date, Le and Appellees executed a contract entitled "Letter of Intent to Purchase All the Shares of Stock of Union Market Two, Inc. and LSV Company, Ltd. for the Business Conducted at 6430 Springfield-Xenia Road, Springfield, Ohio." This contract required Le to pay "rent" directly to LVH, Inc. "in the amount of $3,500 per month" during "the term of the [M]anagement [A]greement."[4] Additionally, Le agreed to pay Union Market Two, Inc. $54,198.96 for the Business's "assets, inventory and good will," with the majority of the price to be remitted in monthly installments of $2,000; to pay Appellees $52,000, reflecting the amount LSV paid to LVH, Inc. under the agreement of September 5, 2006; and to assume LSV's liability for "any [sic] promissory note and mortgage for the purchase of the real estate located at 6430 Springfield-Xenia Road." In return, Appellees agreed that "[u]pon closing" of the sale of the land and the Business to LSV, they would "transfer and assign all their shares of stock in Union Market Two, Inc. and LSV" and "resign their offices in [those] companies."[5]

---

[4] The agreement of September 5, 2006, between Union Market Two and LVH, Inc. required that the former assume the latter's " 'monthly mortgage obligation, together with escrow payments for real estate taxes and assessments and insurance[,] in the amount of $3,456.07,' " though it did not include a provision expressly requiring that Union Market Two pay "rent" to LVH, Inc. Magistrate's Trial Decision 5, quoting the agreement of September 5, 2006.

[5] The letter of intent (LOI) did not specify the person or entity to which Appellees were obligated to "transfer and assign all their shares of stock," though the context implies that the parties intended for Le to be the recipient of the transfer.

{¶ 6} Le assumed management of the Business on June 26, 2007. Thereafter, he failed to pay suppliers' invoices, including those of the gasoline supplier, which stopped delivering in January 2008; failed to repair a broken gasoline pump, despite receiving insurance compensation for that purpose; and failed to pay the Ohio Department of Taxation, leading to the suspension of the liquor license associated with the convenience store. On April 3, 2008, the owner of LVH, Inc. entered the convenience store and changed the locks, which prevented Le from continuing as manager and effectively terminated the Management Agreement. Nevertheless, the sale of the land and the Business by LVH, Inc. to LSV was closed on April 11, 2008. Le not only attended the closing but gave Appellees a check for $12,000, without which they would not have been able to pay the purchase price. Appellees afterward sold the land and the Business to a third party on August 20, 2009.

{¶ 7} Le filed a complaint against Appellees on May 29, 2015, to which Appellees responded with an answer and a counterclaim. The case eventually proceeded to a bench trial before a magistrate that began on November 15, 2017, and ended on January 31, 2018. On August 22, 2018, the magistrate entered a decision, and in its judgment of December 24, 2018, the trial court adopted the magistrate's decision. Le timely appealed to this court on January 23, 2019.

## II. Analysis

{¶ 8} Because they implicate the same standard of review, we address Le's assignments of error together. For his first assignment of error, Le contends that:

> THE TRIAL COURT ERRED IN AWARDING DAMAGES TO THE APPELLEE [sic] ON THEIR COUNTERCLAIM.

And for his second assignment of error, Le contends that:

THE TRIAL COURT ERRED IN REFUSING TO AWARD DAMAGES

TO THE PLAINTIFF FOR LOST PROFITS.

{¶ 9} The "standard of review following a civil bench trial is whether the trial court's judgment [was] against the manifest weight of the evidence." *Downtime Rebuild, L.L.C. v. Trinity Logistics, Inc.*, 2019-Ohio-1869, ___ N.E.3d ___, ¶ 12 (1st Dist.). As would be true in a criminal case, an appellate court applying this standard must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12-13 and 17; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Bynum v. Cotterman*, 2d Dist. Montgomery No. 26222, 2015-Oho-617, ¶ 8, citing *Eastley* at ¶ 17. The appellate court's consideration of the credibility of witnesses is limited because it "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," but it nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." *See State v. Cochrane*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6; *see also State v. Anderson*, 10th Dist. Franklin No. 14AP-1047, 2015-Ohio-4458, ¶ 17.

{¶ 10} Though the appellate court should also be "guided by a presumption that the [trial court's] findings of [fact] were * * * correct," it evaluates the trial court's legal conclusions de novo. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984); *Castlebrook Apts. v. Ballard*, 2d Dist. Montgomery No. 22421, 2008-Ohio-4633, ¶ 13. A trial court's judgment should be reversed "only in the

exceptional case in which the evidence weighs heavily against the judgment." (Citation omitted.) *Bynum* at ¶ 8.

**{¶ 11}** Here, according to Le, the trial court found that Appellees had "materially breached both the LOI and the Management Agreement," and based on that characterization of the court's judgment, Le argues in his first assignment of error that the court erred by awarding damages to Appellees on their counterclaim for breach of contract. Appellant's Brief 8-9. In Le's estimation, the court thereby disregarded the general principle that "[o]nce there has been a material breach of [a] contract, * * * the breaching party is not entitled to collect damages from the nonbreaching party." Appellant's Brief 8-9; *see also Hostetler v. Cent. Farm and Garden, Inc.*, 5th Dist. Tuscarawas No. 2010 AP 23 0046, 2012-Ohio-507, ¶ 40. Le thus mischaracterizes the content of the decision on appeal, and his argument is not well taken.

**{¶ 12}** The trial court's judgment indicated unmistakably that "[n]either the [m]agistrate nor [the] [c]ourt [itself] [found] that [Appellees]' breach of the [M]anagement [A]greement, based upon [Appellees'] failure to pay bills that arose before [the agreement was executed], was a material breach." Final and Appealable Decision and Entry Overruling Plaintiff's Objections to the Magistrate's Decision 7, Dec. 24, 2018 [hereinafter *Judgment Entry*]. Instead, the court concurred with the magistrate's finding that Le and Appellees mutually—but not materially—breached the Management Agreement. Judgment Entry 8. Having been adopted by the trial court, this finding of fact is entitled to considerable deference on appeal, given that the "determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact." *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 11.

**{¶ 13}** The magistrate, furthermore, determined that the Management Agreement and the LOI were separate contracts. *See* Magistrate's Trial Decision 15 (describing the subject of the Management Agreement and the subject of the LOI as "separate issues"). Implicitly, the trial court concurred, and Le has not formally challenged the determination on appeal. Judgment Entry 8 and 12; Appellant's Brief 8-17. Therefore, irrespective of Appellees' material breach of the LOI, the court's decision to award damages to Appellees for Le's breach of the Management Agreement did not contravene the general principle that "[o]nce there has been a material breach of [a] contract, * * * the breaching party is not entitled to collect damages from the nonbreaching party." *See Hostetler* at ¶ 40. Neither of the parties materially breached the Management Agreement.[6] Judgment Entry 7-8.

**{¶ 14}** Deferring, as we must, to the court's finding that neither Le nor Appellees materially breached the Management Agreement, we conclude that the court did not enter judgment contrary to the manifest weight of the evidence by awarding damages to Appellees on their counterclaim for breach of contract. Le's first assignment of error is overruled.

---

[6] Near the end of oral arguments, Le suggested that the trial court should have determined that the Management Agreement and the LOI were components of a single contract memorialized as two documents. Yet, assuming for sake of analysis that the trial court had held that the two documents were a single contract, Appellees' material breach would not automatically have precluded their recovery of damages for Le's non-material breach. Although a "breaching party is not [ordinarily] entitled to collect [contract] damages from [the] non-breaching party," the "non-breaching party is [nevertheless] not entitled to receive more than [he] would have absent the breach." *See, e.g., Gray v. Petronelli*, 11 Dist. Trumbull No. 2016-T-0030, 2017-Ohio-2601, ¶ 21 (referring to the measure of damages for breach of a construction contract). To prevent the non-breaching party from receiving a windfall, a court may award damages to the breaching party "on a quantum meruit basis." *See id.*

{¶ 15} In his second assignment of error, Le insists that the "completely unrebutted" testimony of his expert witness, a certified public accountant, established without "question that [he] lost a profitable business" because Appellees breached the LOI, and based on that characterization of the record, he argues that the trial court erred by denying him recovery for lost profits. Appellant's Brief 11-13. For purposes of appellate review, however, if the "evidence [adduced at trial] is susceptible to more than one interpretation, [the appellate court] must construe it consistently with the [trial] court's judgment," and matters such as the "weight to be given the evidence and the credibility of * * * witnesses are primarily for the trial court" to determine. *See, e.g.*, *San Allen, Inc. v. Buehrer*, 2014-Ohio-2071, 11 N.E.3d 739, ¶ 89 (8th Dist.).

{¶ 16} The trial court in the instant case conducted an independent review of the transcript of the testimony offered before the magistrate by Le's expert witness, and it found that the witness's "testimony was not credible." Judgment Entry 9. Explaining its finding, the court noted among other things that the witness calculated the Business's net profit to be $25,000 to $50,000 per month based on an outdated accounting record of a single month's sales data; that the witness was unaware not only that Le had failed to pay certain bills for the Business, but also that the Business's liquor license had been suspended during Le's tenure as manager;[7] and that the witness could not account for

---

[7] In his initial brief and again in his reply, Le states that "the non-payments [sic] which resulted in the suspension were from before [sic] [he] began operating the [Business] in July 2007." Appellant's Brief 17; Appellant's Reply 2. The record appears to substantiate Le's statement inasmuch the suspension resulted, at least in part, from the failure of Le's predecessors to timely pay certain sales tax assessments that came due before Le's term as manager began. Yet, the evidence also suggests that the suspension resulted from Le's failure to timely pay tax assessments that came due during his term as manager, though the record has not been developed sufficiently to permit a definitive apportionment of the fault for the suspension. Regardless of the apportionment

the discrepancy between the Business's 2007 corporate tax return, which reported a net loss of $737, and her own calculations for the same year, which indicated a profit of approximately $248,000. *Id.* at 9-10.

**{¶ 17}** As the trial court's explanation illustrates, the testimony of Le's expert witness hardly sufficed to establish without "question that [he] lost a profitable business" because Appellees breached the LOI. Appellant's Brief 12. Essentially, Le takes issue with the court's credibility determination, but "a difference of opinion on [the] credibility of witnesses and evidence is not" an appropriate basis for appellate reversal of a trial court's judgment. *Seasons Coal Co.*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Le's second assignment of error is overruled.

### III. Conclusion

**{¶ 18}** We find that the trial court did not err by awarding damages to Appellees for Le's non-material breach of the Management Agreement, despite Appellees' material breach of the LOI, because the Management Agreement and the LOI were separate contracts. Additionally, we find that Le has not demonstrated that the trial court erred as a matter of law by determining that he failed to prove his claim for lost profits. Therefore, the trial court's judgment of December 24, 2018, is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

---

of fault, the suspension of the liquor license should have been taken into consideration as part of any evaluation of the Business's profitability.

Copies sent to:

Kevin A. Bowman
Michael Woloshin
Hon. Mary E. Montgomery