[Cite as *Beck v. W. Chester Lawn & Garden* , 2013-Ohio-2276.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| CHRISTOPHER BECK, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-12-248 |
| | : | O P I N I O N |
| - vs - | | 6/3/2013 |
| | : | |
| WEST CHESTER LAWN & GARDEN, | : | |
| Defendant-Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. CVF1100546

Christopher Beck, 7278 Alert New London Road, Okeana, Ohio 45053, plaintiff-appellant, pro se

David T. Davidson, 127 North Second Street, P.O. Box 567, Hamilton, Ohio 45011, for defendant-appellee

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Christopher Beck, appeals a decision of the Butler County Area Court, awarding him $150 in damages against defendant-appellee, West Chester Lawn and Garden, Inc. (WCL&G).

{¶ 2} Beck purchased a "zero turn" lawnmower from WCL&G in 2001. In July 2011, the lawnmower became in need of repair when it would not start. Beck entered into an

agreement whereby WCL&G picked up the lawnmower at Beck's home and took it to its shop to perform repairs. When WCL&G's driver came to Beck's home for pickup, Beck had the driver sign a statement indicating that there was no damage to the lawnmower at the time of pickup. When WCL&G returned the lawnmower in working order a week or so later, Beck complained that there was a gouge in the metal, gas was missing from the gas tank, and that the grease and gas caps were broken. Beck demanded that WCL&G pay to have his lawnmower repaired, but WCL&G refused, and instead offered to credit Beck with $150 to account for any damage done to the lawnmower.

{¶ 3}  Beck filed a complaint in small claims court, requesting $1,092.82 in damages. WCL&G filed a motion to move Beck's claim to the civil docket because it was prepared to defend against Beck's suit and so that discovery could occur. Beck did not oppose WCL&G's motion on the record, nor did he object to the trial court granting the motion and placing the case on the civil docket. The matter proceeded to a hearing before the magistrate. The magistrate found in favor of Beck, but limited damages to $150 instead of the $1,092.82 that Beck requested.

{¶ 4}  Beck filed objections to the magistrate's decision. The trial court overruled Beck's objections and adopted the magistrate's decision, and Beck now appeals the trial court's decision. Beck appeared pro se at the proceedings below, and he continues to represent himself pro se. Beck's brief attempts to express four assignments of error, along with a general "conclusion" section. Nowhere does Beck properly articulate a formulated assignment of error for purposes of review, although he does raise numerous issues. Beck sets forth multiple arguments as to why the trial court's decision was erroneous. For ease of discussion, we have separated Beck's arguments into five sections, and will discuss them below.

{¶ 5}  First, Beck argues the trial court erred by transferring his case from the small

claims court to the civil docket. According to R.C. 1925.10,

> In the discretion of the court, a case duly entered on the docket of the small claims division may be transferred to the regular docket of the court upon the motion of a party against whom a claim, counterclaim, or cross-claim is instituted or upon the motion of a third-party defendant. A motion filed under this division shall be accompanied by an affidavit stating that a good defense to the claim exists, setting forth the grounds of the defense, and setting forth the compliance of the party or third-party defendant with any terms fixed by the court.

{¶ 6} The record clearly indicates that WCL&G's motion to transfer the case was properly filed and was accompanied by an affidavit, which stated that a good defense to the claim existed and set forth the grounds of that defense. The record reveals Beck did not oppose WCL&G's motion to transfer the case, and the motion was filed over three months before the hearing occurred so that Beck had ample time to prepare his case for the civil docket or to file opposition to the transfer. Beck not only neglected to file opposition to the transfer, but also the record reveals no official objection to the transfer. The trial court was within its discretion to transfer the case to the civil docket and did not abuse such discretion by doing so.

{¶ 7} Second, Beck essentially argues the trial court's decision was against the manifest weight of the evidence. A manifest weight challenge in a civil case concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179. Therefore, this court will review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. *Id.* at ¶ 20. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide because it is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence." *Baird v. Crop Production Services, Inc.*, 12th Dist. Nos. CA2011-03-003, 2011-

04-005, 2012-Ohio-4022, ¶ 17. The question upon review is whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Good,* 12th Dist. No. CA2007-03-082, 2008-Ohio-4502, ¶ 25.

**{¶ 8}** After reviewing the record, we conclude the trial court's decision was not against the manifest weight of the evidence. Beck argued that WCL&G owed him damages because there were cracks in the lawnmower's gas cap, the grease caps were damaged, there was no gas left in the gas tank when the mower was returned to him, and because there was a large "gouge" in the front of the mower, as well as damage to both arms of the mower.

**{¶ 9}** The magistrate found that Beck's testimony was credible and that the lawnmower sustained some damage while under WCL&G's control. However, the magistrate and trial court both properly determined that Beck failed to submit evidence regarding the cost to repair the lawnmower. Beck attempted to admit three estimates regarding the cost to repair the damage. However, Beck did not call the authors of the estimates as witnesses or anyone else who could authenticate the estimates, and WCL&G was unable to cross-examine those who generated the estimates. Therefore, the magistrate properly determined that the estimates constituted inadmissible hearsay within the meaning of Evid.R. 802 and were inadmissible.

**{¶ 10}** Although Beck is correct in stating that the magistrate found his testimony credible and that he submitted evidence that his lawnmower sustained some damage when in WCL&G's control, Beck failed to offer evidence of the monetary damage caused to the lawnmower. Therefore, the trial court did not clearly lose its way or create a manifest miscarriage of justice in limiting Beck's recovery to $150, and its judgment is not against the manifest weight of the evidence.

{¶ 11} Third, Beck argues the trial court erred by not permitting him to call WCL&G's driver as a witness after he had rested his case.  After Beck testified on his own behalf and admitted his exhibits, the magistrate asked whether Beck had any other witnesses.  Beck stated that he would "hold," and WCL&G began presenting its case.  After WCL&G presented its witness and rested, Beck then called himself as a witness in rebuttal.  When Beck finished, he then tried to call WCL&G's witness, the driver who picked up Beck's lawnmower, to the stand.  When the magistrate asked whether the driver was listed on Beck's witness list, Beck responded "no."

{¶ 12} After learning that the driver was not on Beck's witness list, the Magistrate indicated that Beck could not call WCL&G's witnesses and that calling the driver was unnecessary given the driver would only testify to the fact that he signed a statement indicating that there was no damage to the lawnmower before it was picked up.  During the hearing, WCL&G did not dispute the fact that the driver signed the statement.  In response to the magistrate's statement that the driver's testimony was unnecessary because the fact had already been established, Beck stated, "Okay."  Beck did not object to the magistrate not permitting him to call the driver, or renew his desire to call the driver at any point moving forward.

{¶ 13} The record supports the magistrate's statement that Beck had already established that the driver signed the statement indicating that the lawnmower was not damaged before pickup.  Therefore, Beck was not prejudiced and the magistrate did not err in denying Beck's request to call the driver as a witness.

{¶ 14} Fourth, Beck argues the trial court erred by awarding him $150 when that was the same amount he rejected as a settlement offer from WCL&G before the suit went forward. Beck asserts no legal argument regarding why the trial court's judgment was erroneous.  Instead, Beck argues that the trial court improperly limited the award to the

amount offered by WCL&G during the initial negotiation phase of the parties' dispute. Contrary to Beck's argument, however, the trial court did not "magically pull a number out of [its] hat" as Beck now claims. Beck introduced as an exhibit the letter wherein WCL&G offered a $150 credit to Beck's account to remediate the issues. Beyond the proposal of the $150 credit, Beck did not offer any admissible evidence as to the amount of monetary damages incurred, or in any way support his request for $1,092.82 in damages.

{¶ 15} And lastly, Beck argues the trial court erred by not permitting him to admit a video to document the damage to his lawnmower upon return. Beck tried to play a video of his lawnmower that he recorded on his cell phone. However, the magistrate explained to Beck that in order for the video to be admissible, Beck would have to surrender his cell phone. Beck was unwilling to do that, and the video was not admitted into evidence. If Beck was unwilling to surrender his phone as evidence, there was no way that the trial court on objections, or this court on appeal, could review the video. Therefore, it was Beck's choice not to admit the phone and video.

{¶ 16} While Beck has raised several specific arguments challenging the magistrate's decision, he also raises several challenges to the overall *process* by which the magistrate reached its decision. In essence, Beck argues his award of damages was limited because of an unspoken alliance between the magistrate, trial court, defense counsel, and the legal community in general. Beck chose to proceed pro se, as was his right to do. The fact that he failed to submit admissible evidence to support his claim, however, does not impute conspiracy upon the courts or counsel below. Instead, "litigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants * * * and cannot 'expect or demand special treatment from the judge, who is to sit as an impartial arbiter.'" *January Investments, LLC. V. Ingram*, 12th Dist. No. CA2009-09-127, 2010-Ohio-1937, ¶ 18, quoting *Unifund CCR Partners Assignee of Palisades*

*Collection, LLC v. Childs,* Montgomery App. No. 23161, 2010-Ohio-746, ¶ 29.

{¶ **17**} Having reviewed the record, we reject Beck's arguments, and overrule what we have determined are his assignments of error.

{¶ **18**} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.