[Cite as *Morgan v. Keenan*, 2026-Ohio-1034.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

CAROL LYNNE MORGAN,

Plaintiff-Appellant,

v.

WILLIAM KEENAN ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0091**

---

Civil Appeal from the
Mahoning County Court No. 2 of Mahoning County, Ohio
Case No. 2023 CV I 00764 BDM

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed in part. Affirmed in part.

---

Carol Lynne Morgan, Plaintiff-Appellant and

*Atty. William C. Helbley*, for Defendants-Appellees.

Dated:  March 25, 2026

**DICKEY, J.**

**{¶1}** Appellant, Carol Lynne Morgan, acting pro se, appeals the September 18, 2025 judgment entry of Mahoning County Court No. 2 (Boardman), overruling her objections and adopting the magistrate's decision entering judgment in favor of Appellees, William Keenan, Heather Lewis, and John Tyger, following a bench trial to the magistrate in this negligence action. On appeal, Appellant advances four assignments of error. First, she contends the county court abused its discretion in sustaining several motions by Appellees to continue the trial, without providing proper notice to her. Next, she argues the county court abused its discretion in permitting Appellees to file dispositive motions after the deadline. Third, Appellant asserts the county court abused its discretion and ruled against the manifest weight of the evidence when it entered judgment in favor of Keenan and Lewis due to Appellant's failure to offer expert testimony establishing her damages. Finally, Appellant argues the county court abused its discretion when it found Tyger is not liable because he did not have actual or constructive notice of the patent danger that the trees would fall.

**{¶2}** We affirm the judgment of the county court with the sole exception of the county court's conclusion that Appellant has not established damages in the partial amount of $375. As a consequence, we remand the matter to the county court for the issuance of a judgment entry in favor of Appellant and against Keenan and Lewis, jointly and severally, in the amount of $375.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** Appellant, who resides at 878 Indianola Road, alleges she suffered damages as a result of four dead or dying trees on a neighboring property, 864 Indianola Road, which fell in her yard and damaged her residence and property. Tyger is the owner of 864 Indianola Road, and Keenan and Lewis (Tyger's daughter-in-law) are the residents of the property.

**{¶4}** Appellant, acting pro se, filed her original complaint against Keenan and Lewis in small claim court on August 4, 2023. That same day, the court issued a notice of small claim hearing to be conducted on September 25, 2023. However, on August 31, 2023, Keenan and Lewis filed a notice of appearance of counsel and a motion

to transfer the matter to the regular civil docket.  The motion reads in relevant part "[f]or cause, [Keenan and Lewis] wish to engage in discovery."  The motion was sustained the same day, and by order of the county court filed on August 31, 2023, the matter was transferred to the regular civil docket, effectively cancelling the small claim hearing date. Appellees were provided an additional 28 days to file an answer.

{¶5}    According to a docket entry on September 18, 2023, Appellant contacted the county court to determine the reason the matter had been transferred. Unaware of the actual conversation that occurred between Appellant and the county court staff, the docket entry reads in relevant part, "I tried to give legal aid number but she didn't want to hear it, as she can handle this case pro se."

{¶6}    Keenan and Lewis filed their answer on September 26, 2023.  A civil pretrial was scheduled for January 8, 2024. On October 6, 2023, Keenan and Lewis filed a notice of service of their first request for admissions, which were served on Appellant the same day. A notice of appearance of counsel was filed on behalf of Appellant on October 26, 2023.

{¶7}    At the civil pretrial on January 8, 2024, the discovery deadline was set for 60 days, the dispositive motions deadline for 90 days, and a trial was scheduled for May 13, 2024.  In addition to attending the civil pretrial, counsel for Appellant exchanged discovery with opposing counsel and filed an amended complaint with leave of court adding Tyger as a defendant.

{¶8}    Counsel for Appellant filed a motion to withdraw on January 18, 2024. Also on January 18, 2024, Keenan and Lewis filed a motion to dismiss, with their affidavits attached based on the fact that they do not own the property. The magistrate scheduled the motion for a non-oral hearing on February 26, 2024 and indicated that neither counsel nor the parties are required to attend a non-oral hearing.

{¶9}    On January 26, 2024, Appellant filed a pro se motion for judgment on the pleadings and a response to the motion to dismiss.  In her motion for judgment on the pleadings, Appellant writes:

> At the outset, [Appellant] believes her case was inappropriately moved from the "Small Claims" docket, to the "Regular Civil" docket upon the request of the counsel for [Keenan and Lewis.] [Appellant] filed her case

in small claims because the amount of damages which are $2,353.84 do not exceed the $6,000 threshold of a regular civil docket.

(1/26/24 Motion at p. 2.)

**{¶10}** The magistrate sustained Appellant's counsel's motion to withdraw on February 5, 2024 and to date, Appellant proceeded with the matter acting pro se.

**{¶11}** Pursuant to a magistrate's decision filed on March 6, 2024, Keenan and Lewis's motion to dismiss was converted to a motion for summary judgment. The newly converted motion for summary judgment and Appellant's motion for judgment on the pleadings were both scheduled for a non-oral hearing on April 8, 2024, again with no appearances necessary.

**{¶12}** Appellant filed her objections to the magistrate's decision converting the motion to dismiss to a motion for summary judgment on March 13, 2024. Appellant's objections were dismissed as premature the following day.

**{¶13}** On April 22, 2024, a magistrate's decision was issued overruling both Appellees' motion for summary judgment and Appellant's motion for judgment on the pleadings. The magistrate's decision reads in relevant part, "[c]ase to be set for trial in thirty (30) days." A notice was issued the following day reflecting the trial was scheduled for May 13, 2024, which was the original regular civil docket trial date. Appellant did not file objections to the magistrate's decision overruling the argument regarding the transfer of the case to the regular civil docket.

**{¶14}** In the interim, a discovery issue regarding Appellant's alleged failure to respond to interrogatories arose and was briefed by the parties. On May 3, 2024, Appellees filed a motion for leave to serve discovery originally requested on March 19, 2024 and to continue the trial then set to proceed on May 13, 2024. Appellees predicated the motion to continue the trial on the need "to provide [Appellant] time to respond to [the] request for discovery and to give [Appellees] the opportunity to review such responses prior to trial."

**{¶15}** Counsel for Appellees argued he did not receive any response to the March 19, 2024 discovery requests. Appellant countered Appellees' counsel had omitted a letter from her electronic mail address so she never received the request.

Case No. 25 MA 0091

{¶16} A partially hand-written order filed by the county court on May 6, 2024 instructed Appellee to provide a copy of the March 19, 2024 discovery request by electronic mail to Appellant. The May 13, 2024 trial date remained as scheduled "pending a determination of whether discovery was received by [Appellant]."

{¶17} On May 8, 2024, the magistrate converted the May 13, 2024 trial into a hearing on the pending discovery issue. The hearing on the discovery issue was conducted by the county court on May 13, 2024 and the matter resolved by an agreed judgment entry ("agreed judgment entry").

{¶18} The agreed judgment entry extended the discovery deadline for 30 days, the dispositive motion deadline for 90 days, and the trial date for 120 days, by agreement of the parties. The agreed entry is signed by Appellant and counsel for Appellees. In accordance with the agreed 120-day extension, the trial was reset to September 16, 2024, by separate entry filed that same day.

{¶19} Despite her signature, Appellant has subsequently alleged she strenuously objected to the extension of deadlines, but was forced to sign the agreed entry by the county court. At oral argument, however, Appellant conceded she voluntarily signed the agreement, explaining she "did not want to upset the court, make a big problem, lose her case, so [she] was worried about that, [and] being compliant usually works out better." (Oral argument at 6:40.) In other words, Appellant conceded she signed the agreed order based on a supposition, unsupported by the record, that her refusal to sign the agreed order would prejudice her case.

{¶20} Appellant further represented at oral argument that no stenographer was present at the hearing and no recording was made. Mahoning County Area Courts Local Rule 18 requires all civil hearings be recorded. However, the record is devoid of a transcript of the May 13, 2024 hearing. Whether the county court failed to make a record or whether Appellant failed to request the transcript from the hearing cannot be ascertained from the trial court record.

{¶21} On August 30, 2024, roughly two weeks after the dispositive motion deadline had passed, Appellees filed a motion for leave to file dispositive motions with an attached motion for summary judgment. According to the motion, Appellees received Appellant's response to their final request for interrogatories and production of documents

on August 6, 2024, and they required additional time to review Appellant's response and prepare a motion for summary judgment.

{¶22} The county court sustained the motion for leave, accepting the untimely-filed motion for summary judgment, set a further dispositive motion deadline of September 5, 2024, and scheduled a non-oral hearing, with no appearances necessary, on the dispositive motions for October 7, 2024. Although the cancelation of the September 16, 2024 trial date was implied by the extension of the pretrial deadlines, the trial date was not officially continued.

{¶23} On September 10, 2024, Appellees filed a motion to continue the September 16, 2024 trial. According to the docket, the motion was never granted or overruled by the county court. However, the trial was not conducted on September 16, 2024 and although Appellant alleges she and her witnesses were present and ready to proceed, the record is void of any evidence whether any parties or witnesses appeared on this date.

{¶24} Appellant filed a motion to strike Appellees' motion for summary judgment as untimely due to the "breach" of the agreed order on September 11, 2024, her opposition to Appellees' summary judgment motion and a summary judgment motion of her own on September 26, 2024, and a judicial notice alleging counsel for Appellees had a conflict of interest on October 3, 2024. In addition to her merits arguments, Appellant objected to the extension of time to file the motion for summary judgment as well as the original trial continuance and the requested trial continuance. She accused counsel for Appellees of misconduct and the magistrate of bias based on the extension of the pretrial deadlines and continuance of the trial.

{¶25} Appellant's motions were scheduled and joined for hearing with Appellee's motion for summary judgment on the existing non-oral hearing date of October 7, 2024, again with no appearances necessary.

{¶26} A magistrate's decision issued on October 17, 2024 overruled both summary judgment motions. According to the magistrate's decision, the "[c]ase was to be set for a half-day trial on the next available date on the court's docket."

{¶27} On December 4, 2024, Appellant filed a Rule 60(B) motion for relief from the magistrate's decision, based on alleged fraud committed by counsel for Appellees.

She cited counsel's various motions to continue. She further alleged counsel committed a "breach of contract," when he sought to continue dates previously set in the agreed judgment entry.

**{¶28}** The 60(B) motion was denied as untimely in a judgment entry issued by the county court on December 26, 2024. The judgment entry reads, in relevant part, "[Appellant] must pay the jury deposit of $300 by January 3, 2025 or the trial to the magistrate on January 6, 2025 will go forward. If the jury deposit is paid, then the case will be set for jury trial during the spring 2025 jury session."

**{¶29}** Appellant failed to pay the jury deposit, therefore a bench trial commenced on January 6, 2025 before the magistrate. The magistrate accepted the testimony of all of the parties. The four trees at issue had fallen in October of 2021, December of 2022, and March and April of 2023. (Trial Tr., p. 98.)

**{¶30}** During Appellant's case-in-chief, she first offered the testimony of all of the Appellees on cross-examination. During her cross-examination of Keenan, Appellant offered a lengthy text message chain between her and Keenan, which began on December 28, 2022 and ended on March 31, 2023 (Exhibit 1). The text chain chronicled their communication regarding the removal of the December 2022 tree from Appellant's yard and continued until Keenan warranted that three additional trees in his yard were scheduled to be removed.

**{¶31}** Before Appellant offered her own testimony, the magistrate explained she need not ask and answer questions, but instead could provide a "summary statement of what [her] testimony would be." (*Id*. at p. 53.) First, Appellant objected to the untimeliness of the proceedings in order to preserve the issue for appeal. The magistrate informed Appellant that the issue should have been raised prior to trial, but she could argue her objection to the county court following the bench trial. The magistrate instructed Appellant that any objection raised during the trial must relate to an issue that occurred during the trial.

**{¶32}** Rather than providing narrative testimony, Appellant attempted to meet her burden of proof through the introduction of a series of exhibits. First, Appellant introduced a piece of tree bark (Exhibit 2), which prompted the magistrate to inquire, "do you have some expert that is going to come to testify that these trees, whatever trees, were

diseased or had some type of parasites, or whatever, in order to make them fall." (*Id.* at p. 60.) Appellant responded, "in my original file there is a letter from Davey Tree Service. And it's signed by the arborist. He was going to come and testify." The magistrate responded, "[h]e has to be here today." Appellant responded, "[w]ell . . . there's a problem with that. This trial has been reset and reset and reset and reset. And he can't take off all those days." (*Id.*)

**{¶33}** Significantly, the magistrate explained "this is not small claims. It's a full complaint." Appellant responded, "Absolutely." (*Id.* at p. 61.)

**{¶34}** The magistrate then explained the term "hearsay." Appellant responded, "[the arborist] didn't see the trees fall. He didn't see them being chopped up. He wasn't here for that. He can't say as to what these would be. Only I can do that. So [the bark] is my evidence." (*Id.* at p. 62.) Despite the foregoing colloquy with the magistrate, including his explanation of hearsay, Appellant did not request a continuance of the bench trial to secure additional witnesses to testify.

**{¶35}** Next, Appellant offered an excerpt of the Landlord-Tenant Act (Exhibit 3). She argued a tenant has no responsibility for maintenance, however, all of the evidence provided by Appellees demonstrates Keenan and Lewis were not tenants. As residents, Keenan and Lewis were responsible for maintaining the property.

**{¶36}** Then, Appellant offered photographs of a tree that fell in her yard. (Exhibit 4). According to her description of the photographs, the tree depicted in the photographs was rotten and fell into her yard on December 3, 2022. Appellant offered additional photographs of other trees, which Appellant testified were in Appellees' front yard. (Exhibit 5). Appellant further testified the photographs depicted trees that were identified by Lewis as "dead," which Keenan and Lewis were going to remove. (*Id.* at p. 67.) Appellant testified the photographs were taken in March of 2023 after the March 2023 tree fell into her yard.

**{¶37}** With respect to the trees depicted in Exhibit 5, Appellant testified, "[s]o the bottom roots of those trees are clearly buckled, according to the arborist." (*Id.* at p. 68.) The magistrate stated, "you can't say what the arborist said. So hearsay (inaudible) no." Appellant responded, "Yes." (*Id.* at p. 69.)

**{¶38}** The magistrate continued, "I'm not going to take that into account because we've already established that the arborist is not going to be here to testify. Any statement made by the arborist outside of this courtroom is hearsay." Appellant responded, "Yes. Yes." (*Id.*)

**{¶39}** Appellant offered a series of additional photographs, which included a photograph of a pine tree in her yard, which was damaged when it was struck by a tree that had fallen from 864 Indianola Road. (Exhibit 6). In order to establish Keenan and Lewis had actual notice of the patent danger of the trees at 864 Indianola Road, Appellant offered two letters that she sent to Kennan and Lewis dated July 17 and 26, 2023 (Exhibit 7).

**{¶40}** Relevant to this appeal, Appellant next stated:

> I would like to enter this as Exhibit 8, which would be some of the costs I've incurred, and some that will still be incurred to take out that tree. I have to remove that pine tree that is dead and replace it. I have to remove all the broken pieces of shrubbery. . .

(*Id.* at p. 82.) The magistrate interrupted her testimony to confirm he had the correct document in his possession for reference.

**{¶41}** Exhibit 8 is comprised of a "receipt for services," dated June 24, 2023, which was authored and signed by George Fair, totaling $1,703.84, and two estimates, one from Petitti's Garden Center – Boardman and one from A&J Roofing. Fair's receipt is computer-generated and his services are not associated with a particular home repair business. Fair's receipt reads in relevant part:

### Receipt for Services

1.) Cut up one extra large tree and haul into the woods behind property @ 4 ½ hours. Discount for neighbor.                    **$250.00**

2.) Clean up debris and level damaged yard area where the neighbor's diseased/dead/pest infested tree fell causing damage to [Appellant's] tree.                    **$125.00**

## **Work needed to be completed**

1.) Trim down damaged Pine tree that sustained damage on April 29, 2023, when the neighbor's diseased/dead/pest infested tree fell on [Appellant's] healthy pine tree and caused breakage to the side of [Appellant's] Pine tree that sits on [Appellant's] yard /property.  Place grass seed to recover [Appellant's] yard.          **$225.00**

2.) Replace the Pine tree in [Appellant's] yard that was damaged and destroyed in [sic] December 3, 2022, when the neighbor's large/unhealthy/diseased/pest infested tree in their back year fell on [Appellant's] Pine tree in her back yard.  This is a separate tree issue as the neighbor's [sic] have had four (4) dead/unhealthy/diseased/pest infested trees that have come down onto [Appellant's] property in the last two (2) years.

3.) Clean up debris, and haul away for this separate Pine tree. **$325.00**

4.) Remove damaged (4) Forsythia bushes that were destroyed by neighbor's fallen unhealthy dead tree on March 25, 2023, and replace them.          **$250.00**

5.) Attached **Petiti's [sic] Garden Center ESTIMATE** for materials and (1) Norway Spruce Pine Tree, (4) replacement Forsythia Bushes, Grass seed to repair lawn, Bale of Straw to cover lawn while grass begins to sprout.          **$528.84**

**{¶42}**  The estimate for materials from Petitti's Garden Center totaling $528.84 for grass seed and the new tree and shrub is attached to the Fair receipt and included in his calculation of damages.  Exhibit 8 also includes an estimate from A&J Roofing in the amount of $650 to repair brick and fascia on Appellant's house, which was not included in Fair's calculation of damages, for a total of $2,353.84 in repair and replacement costs.

**{¶43}**  Appellant offered no testimony regarding the specific breakdown of cost or details of the repairs and replacement in Exhibit 8.  However, the magistrate specifically

Case No. 25 MA 0091

inquired, "tell me why do we have this estimate for $650 for A&J Roofing?" Appellant responded:

> Your Honor, this is the roofing matter. So they're March 2023 – after having noticed actual and constructive notice in February and December, according to the text messages, another tree fell, March 2023, busted through their fence, hit the top of my roof, dented the fascia, damaged tiles on the roof. And it skidded down the side of the home causing damage to the bricks.
>
> And when it fell, was such a force it busted down all my shrubbery. That's the second page. Snapped off all my beautiful arborvitae, all of my plants and shrubbery on that side of the home. And three of my windows were broken.

(*Id.* at p. 83-84.)

**{¶44}** Appellant provided the following additional testimony with respect to Exhibit 8:

> My expenses have gone way beyond that.
>
> . . .
>
> [M]y neighbor knows I have a heart condition and I can't do that by myself. So his estimate is in there of things I've paid him for and things he still needs to do to repair the damage done. I've tried to keep it at a minimum instead of asking for everything that I have had to pay.

(*Id.* at p. 82-83.)

**{¶45}** Appellant testified three glass block windows in her basement had been broken by one of the falling trees, but she had already planned to replace the windows when the damage occurred so she did not include the cost in her calculation of damages. Appellant continued:

Case No. 25 MA 0091

So I'm not asking for the replacement of the windows. But I am asking for the repair of my roof, which still hasn't been done. And the fascia there is dented and water and ice is getting behind it, which is causing more damage.

And all of my shrubbery that me [sic] and my children planted are all smashed and gone now, dead.

(*Id.* at p. 86.)

**{¶46}** Next, Appellant offered a photograph of the pine tree on her property (Exhibit 9).  With respect to the photograph of the pine tree, Appellant testified:

So this is the tree on the side of my house that their tree snapped off and damaged, which I'm going to have to also replace.

And that is the Petitti's Garden estimate. I was only getting an estimate on, you know, getting another pine tree to put in place of where the one that they snapped off.  And replacing the shrubbery, I'm going to have to pay somebody to do all of that.

(*Id.* at p. 86-87.)

**{¶47}** On cross-examination, Appellant conceded she had never seen Tyger at 864 Indianola Road. (*Id.* at p. 98.)  She further conceded she did not provide actual notice to Tyger of the patent danger of the trees at 864 Indianola Road. (*Id.* at p. 105-106.)

**{¶48}** Appellees' counsel asked Appellant about the amount of her damages. Appellant responded, "I don't recall the exact amount. But it is in my complaint.  And I gave exhibits to the magistrate . . . It's about – I think it's $2,353 to replace the tree, fix the roof, repair the shrubbery, clean up the yard from the back."  (*Id.* at p. 129.)  The following exchange regarding Exhibit 8 followed:

Q:      Did you offer any testimony to substantiate that today?

A:      Yes. And I gave the magistrate some of the bills.

Case No. 25 MA 0091

Q: Did you? And, and who, who prepared that particular estimate?

A: Whoever's name is on the estimate.

Q: Is that person coming in to testify today?

A: No.

Q: Okay. So you haven't offered any testimony to substantiate that, have you?

A: Yes, I have.

Q: Well, who – did Mr. [Fair] come in and testify?

A: He didn't but I did.

Q: Did you prepare [Exhibit 8]?

. . .

A: He prepared it.

Q: So you can't attest to its veracity now, can you?

A: Well, yes I can because I paid him.

Q: My question is, did you prepare it?

. . .

A: Mr. [Fair] did.

Q: Okay.

A: And he didn't come in.

Q: And he didn't testify today, did he?

A:     No, he did not.

(*Id.* at p. 129-131.)

{¶49} On re-cross, Appellees' counsel asked Appellant:

Q:     [D]o you have any expert testimony – have you offered any expert testimony today that the trees were diseased, bug infested or further hazardous?

A:     I will say no. That was impossible because the trial has been continued so many times.  And people can't take off work that many times.

Q:     So the answer is no, correct?

A:     The answer is no.

(*Id.* at p. 134.)

{¶50} At the conclusion of Appellant's case-in-chief, counsel for Appellees objected to the admission of Exhibit 8, arguing the exhibit constitutes hearsay.  However, the magistrate overruled Appellees' objection to the admission of Exhibit 8.  The magistrate conditioned the admission of Exhibit 8 on the following caveat, "[b]ut I will use that to the extent that I feel it is appropriate. I am cognizant that there are parts of that exhibit, it's not the entire exhibit, that appears to be hearsay." (*Id*. at p. 137.)

{¶51} After Appellant's exhibits were admitted, counsel for Appellees moved for a directed verdict, arguing there was no evidence of ascertainable damages. (*Id*. at p. 140.) Appellant objected to the motion without any legal analysis.

{¶52} The magistrate overruled the motion to dismiss, but observed:

There has been evidence of damages.  Ascertainable damages, I'm not so sure.

I think [Appellant] may find herself in a very precarious position of not having witnesses here to establish it.

Case No. 25 MA 0091

> But damages, I think there's damages. Just not an ascertainable amount.
>
> So the motion to dismiss is overruled.

(*Id.*, p. 140-141.) Despite the magistrate's observation regarding Exhibit 8, Appellant did not request a continuance to secure the presence of additional witnesses at the trial.

{¶53} On direct examination, Tyger testified that he is the owner of the property and he pays the real estate taxes and the homeowner's insurance. He further testified Keenan and Lewis were not tenants, as they did not sign a lease or pay any rent. (*Id.*, p. 141-142.)

{¶54} Tyger denied that Keenan or Lewis ever told him about the trees that had fallen onto Appellant's property. Further, Tyger testified he received no written notice of the threat caused by the dead or dying trees on the property. (*Id.*, p. 143.)

{¶55} According to Tyger's testimony, he does not visit the property or perform any maintenance, as Keenan and Lewis perform all maintenance. Moreover, Keenan and Lewis have a blanket authorization to maintain the property, that is, they did not seek nor were they required to seek his specific permission to remove trees. (*Id.*, p. 145.) However, the foregoing testimony was directly contradicted by the testimony of Keenan and Lewis, who each testified that Tyger's approval was required for any major improvement to the property, including tree removal. (*Id.*, p. 148, 175.)

{¶56} Finally, Tyger testified he could not recall when he last visited the property, then conceded it was roughly one year prior to the bench trial. He testified he did not see any dead or dying trees during his last visit to the property. (*Id.*, p. 51.)

{¶57} As the trial continued past the magistrate's estimate of the required length, he began to express exasperation. For instance, the magistrate said, "[g]et to the point. It is now 1:00. This case is going to be finished in 45 minutes." (*Id.* at p. 173). At the conclusion of Appellees' case roughly an hour later, the following exchange occurred:

> THE MAGISTRATE: Do you intend to present a rebuttal?
>
> APPELLANT: Yes. Thank you.

THE MAGISTRATE: Okay. You can go out and ask the clerk and they'll get you another date.

APPELLANT: Okay.

THE MAGISTRATE: I said we'll be done at 1:30. It's now 2:00. This case has gone way too long.

APPELLANT: Okay. Then we will just finish it today right now.

THE MAGISTRATE: We can't because I have other commitments. So that's my problem.

APPELLANT: Yes, Your Honor.

THE MAGISTRATE: This is a part-time court.

APPELLANT: Yes. Yes. Okay. So when we come back what is –

. . .

THE MAGISTRATE: What, if anything, do you have additional that you want to tell me?

APPELLANT: I could sum the rest of this in five minutes or less. If you have five minutes.

THE MAGISTRATE: Well, that's what we're going to. We're going to do closing arguments right now.

(Trial Tr., p. 232-234.)

**{¶58}** After Appellees rested their case, the parties provided closing arguments. At the direction of the magistrate, the parties filed findings of fact and conclusions of law.

**{¶59}** In the magistrate's decision issued on February 10, 2025, he found each of the appellees were "in a position to owe a duty" to Appellant, that is, Keenan and Lewis as the residents of the property and Tyger as the owner. The magistrate opined the duty

owed to Appellant turned on the foreseeability of the patent damage caused by the dead or dying trees. Based on the foregoing test, the magistrate concluded Tyger had neither actual nor constructive notice of the patent damage.

**{¶60}** However, the magistrate found Keenan and Lewis had actual notice of the patent damage. The magistrate based his conclusion on Appellant's testimony that she had been complaining since 2015 about the dead or dying trees. The magistrate further relied on Keenan's concessions that he paid for the clean-up of a felled tree from the property in 2018, and he ultimately removed trees from the property in 2023 because he was tired of Appellant's "constant complaints." (2/10/25 Mag. Dec., p. 7.) Keenan and Lewis did not file objections to this conclusion of law, which was adopted by the county court, and they have not appealed the county court's decision with respect to their duty, the breach of that duty, and the fact that the breach was the proximate cause of Appellant's alleged damages.

**{¶61}** Nonetheless, the magistrate entered judgment in favor of Keenan and Lewis on Appellant's negligence claim due to a lack of evidence establishing Appellant's damages. The magistrate first acknowledged the distinction between small claim court and county court, that is, the rules of evidence do not apply in the former but do apply in the latter. Next, the magistrate cited Ohio case law for the rule that evidence of damages must be shown with a reasonable degree of certainty, that is, a plaintiff may not recover speculative damages. *See Girard Techs. Inc. v. Stiles*, 2025-Ohio-4869, ¶ 51 (7th Dist.).

**{¶62}** Citing Evid. R. 801, captioned "Hearsay," the magistrate opined:

> The billing statement of George Fair, Plaintiff's Exhibit 8, is clearly a statement other than one made by Mr. Fair at trial and was submitted into evidence to prove the truth of the matter asserted, that is, the sum total calculation of the plaintiff's damages allegedly caused by the defendants. The plaintiff's testimony in that regard mirrored the various charges within Plaintiff's Exhibit 8. Plaintiff offered no exception to the hearsay rule which would permit the consideration of such exhibit. The plaintiff's testimony in regard to damages was nothing more that a recitation of the charges set forth in Plaintiff's Exhibit 8 and it follows that if such exhibit is not admitted

any testimony predicated upon such exhibit likewise has no evidentiary basis.

(Mag. Dec., p. 8.) It is important to note, the magistrate predicated his decision to exclude Exhibit 8 on First and Sixth District case law, which holds "[w]hile there is discretion to admit or exclude relevant evidence, there is no discretion to admit hearsay." (internal citations omitted) (*Id.* at p. 9.)

{¶63} Appellant filed objections to the magistrate's decision on February 24, 2025. No objections were filed by Appellees.

{¶64} First, Appellant alleged a procedural due process claim based on counsel for Appellees' "dilatory and spurious tactics" to delay a trial he could not win. Appellant cited Mahoning County Civil Local Rules, Rule 7(E)(1)(c), which reads in its entirety:

> Except for illness or other physical disability of a party, counsel or a necessary witness, or the occurrence of some other unexpected and unforeseeable circumstance, or as otherwise provided in these rules, no case assigned for trial in accordance with the provisions of these rules shall be continued. If one or more parties are not ready to proceed on the day the case is set for trial, and if the lack of readiness is due to the fault of a party, the Court may dismiss an action or render judgment against the at-fault party; if the lack of readiness is the fault of counsel, the Court may take such action as it deems appropriate within its inherent powers to discipline counsel, without affecting the rights of a party.

{¶65} Appellant also cited Rule 7(E)(1)(d), which reads in its entirety:

> It shall be the responsibility of counsel who has a case assigned for trial to promptly notify the Court Administrator and the trial Judge of any facts which might interfere with the trial of the case immediately upon becoming aware of them. No continuance shall be granted except upon written request to the Court pursuant to Ohio Superintendence Rule 7 [all motions shall be accompanied by a supporting memorandum], stating the reason why a continuance is necessary, together with a written certification

that the party on whose behalf the request is made has been notified of such request.

**{¶66}** Finally, Appellant cited Rule 41 of the Ohio Rules of Superintendence, captioned "Conflict of Trial Court Assignment Dates, Continuance and Engaged Counsel," which provides a continuance of a scheduled trial or hearing is a matter within the sound discretion of the trial court for good cause shown. Rule 41(A) reads in relevant part: "[n]o court shall grant a continuance to any party at any time without first setting a definite date for the trial or hearing."

**{¶67}** Appellant alleged she strenuously objected to the continuance of the trial in May of 2024 and was forced by the county court to sign the agreed order continuing the trial. Appellant accused the magistrate of bias. Appellant contends the extension of the dispositive motion deadline and trial in September of 2024 was a breach of the agreed order.

**{¶68}** Appellant does not object to the county court's transfer of the case from small claim court to the regular docket, only that the transfer was undertaken without setting a new trial date. She alleged her witnesses agreed to testify at the September 25, 2023 small claim trial. Appellant further alleged her witnesses "appeared at the trial court and were once again turned away" on September 16, 2024, because the county court did not rule on Appellees' September 10, 2024 motion to continue the trial prior to the scheduled date. Appellant alleged she did not bring her witnesses to court on January 6, 2025 because she assumed the bench trial would not proceed based on the previous continuances.

**{¶69}** Second, Appellant alleged the magistrate abused his discretion when he sustained the extension of the dispositive motion deadline after it had passed. She cited the alleged breach of the agreed order.

**{¶70}** Third, Appellant argued the magistrate's conclusion that she failed to establish her damages was against the manifest weight of the evidence. She requested a hearing on damages. Fourth, Appellant argued the magistrate erred and abused his discretion when he granted multiple non-emergency continuances. Appellant did not object to the magistrate's conclusion that Tyger did not have actual or constructive notice of the patent danger of the dead or dying trees.

Case No. 25 MA 0091

**{¶71}** The county court overruled Appellant's objections to the magistrate's decision in a judgment entry issued on July 10, 2025, but failed to adopt the magistrate's findings.  Appellant filed her notice of appeal on August 8, 2025.  Roughly two months later on September 18, 2025, the county court issued the judgment entry on appeal, overruling Appellant's objections *and* adopting the magistrate's decision.

## ANALYSIS

**{¶72}** Appellant's first and second assignments of error are addressed together as they both challenge the county court's discretion to control its own docket.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT ISSUED VAGUE AND INCOMPLETE ORDERS GRANTING MULTIPLE CONTINUANCES AND ADDITIONAL TIME TO APPELLEES WHEN THE ORDERS FAILED TO SET A DEFINITE DATE FOR A NEW TRIAL, AND SUCH ORDERS WERE ISSUED WITHOUT PROPER NOTICE TO APPELLANT AS TO, IF, OR WHEN, THE NEW TRIAL WOULD BE CONTINUED TO.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT VIOLATED THE LAWS OF CONTRACT WHEN IT PERMITTED THE APPELLEES TO FILE SEVERAL MORE DISPOSITIVE MOTIONS PAST THE COURT'S MAY 13, 2024 AGREED UPON 90 DAY DEADLINE FOR FILING DISPOSITIVE MOTIONS AND DELAYED APPELLANT'S TRIAL.**

**{¶73}** In her objections to the magistrate's decision, Appellant argued "the 'Trial' proceeded even though [Appellant] anticipated and expected yet another delay or continuance after her case had already languished in the trial court for almost a year and a half at that point due to at least (4) continuances."  (2/24/25 Objections, p. 20.)  Moreover, Appellant asserts she "could not further burden her witnesses who already

took days off of work a couple of times prior and lost wages to come to court just to be told the 'Trial' had been continued again and again was abusive to her witnesses." (*Id.*) Appellant contends her relationship with her witnesses has been damaged by the two continuances. (*Id.*, p. 20-21.)

**{¶74}** "When addressing the request for continuance of a trial, appellate courts employ an abuse of discretion standard." *Matter of E.T.*, 2023-Ohio-444, ¶ 85 (7th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶75}** Although set for a total of four different dates, there were three continuances of the trial: the small claim hearing on September 25, 2023 was continued to May 13, 2024 after the case was transferred to the regular civil docket to exchange discovery; the May 13, 2024 trial which was continued to September 16, 2024 by agreement of the parties because of an issue exchanging discovery due to a typographical error in Appellant's electronic mail address; and the September 16, 2024 trial which was reset to January 6, 2025 due to dispositive motions pending.

**{¶76}** In *Unger, supra*, the Ohio Supreme Court addressed the denial of a motion for a trial continuance:

> "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." [quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)].
>
> . . .
>
> Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.
>
> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have

been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

(Citation omitted.) *Unger*, 67 Ohio St.2d at 67-68.

{¶77} The matter was originally set for a small claim hearing on September 25, 2023. However, the August 31, 2023 order transferring the case to the regular civil docket effectively canceled the small claim hearing with notice in excess of more than three-weeks notice. Therefore, the first trial "continuance" was the result of the transfer of the case from the small claim court to the regular civil docket, which required a new trial date in order to effectuate the exchange of discovery. On September 26, 2023, the matter was set for a pretrial conference on January 8, 2024. On October 26, 2023, a notice of appearance of counsel was filed on behalf of Appellant. Following the pretrial conducted on January 8, 2024, the matter was set for trial on May 13, 2024.

{¶78} The May 13, 2024 trial date was converted to a pretrial hearing on May 8, 2024 in order to address discovery issues created by the omission of a letter from Appellant's electronic mail address by Appellees' counsel. Therefore, Appellant was given notice of five days to cancel the appearance of her witnesses so they were not inconvenienced by appearing for a trial that was not proceeding. At the May 13, 2024 pretrial, the parties agreed to reset the trial in approximately 120 days. In accordance with the agreed 120-day extension, the trial was reset to September 16, 2024, by separate entry filed that same day.

{¶79} While the September 16, 2024 trial date was never officially continued by order, there was a motion to continue the trial filed on September 10, 2024, which remained pending on the scheduled trial date. Further, a September 10, 2024 docket entry reads, "[m]atter to be set for non-oral hearing. Trial set for 09/16/24 postponed pending non-oral hearing per magistrate." Further, Appellant had notice that Appellees' dispositive motion was pending, and a non-oral hearing on the motion was set on

September 11, 2024, which was scheduled to proceed on October 7, 2024. It would have been better practice for the magistrate to rule on the pending motion to continue prior to the trial date, or issue a notice to Appellant cancelling the trial and resetting the matter to a date following his decisions on the pending motions. However, the inconvenience of allegedly having her witnesses at the county court for a trial that did not proceed does not amount to an abuse of discretion of the magistrate in continuing the case, especially considering the pending motions. Further, the new trial date of January 6, 2025 provided three-and-a-half months to Appellant to arrange for the appearance of her witnesses at the trial, whether by mutual agreement or through the subpoena power of the county court.

**{¶80}** The record reflects Appellant understood the significance of the testimony of the authors of the estimates, as she alleged they had agreed to attend the trial before it was continued. She contends they either refused or were simply unable to attend the January 8, 2025 bench trial, however she had the subpoena power of the county court to compel their attendance. *See* R.C. 1907.20. Finally, despite the county court's admonition regarding the potential insufficiency of her evidence at the bench trial, she did not request a continuance of the matter in order to facilitate the presence of her witnesses.

**{¶81}** Accordingly, we find the county court did not abuse its discretion in continuing the trial and extending the dispositive motion deadline. Therefore, Appellant's first and second assignments of error have no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DECIDED APPELLEES WERE THE PREVAILING PARTY IN THIS CASE BECAUSE APPELLANT DID NOT HAVE AN EXPERT WITNESS TO GIVE TESTIMONY AND THE TRIAL COURT FAILED TO PROVIDE A REMEDY TO APPELLANT BASED SOLELY UPON THAT REASONING.**

**{¶82}** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C).

**{¶83}** There is a split amongst Ohio appellate districts between those that view the admission of hearsay as a question of law for which de novo review is appropriate, and those that treat hearsay as falling within the general abuse-of-discretion standard. *Compare, e.g.*, *John Soliday Fin. Group, L.L.C. v. Pittenger*, 2010-Ohio-4861, ¶ 28 (5th Dist.) ("[W]hile the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay. . . . Thus, we review de novo the trial court's decision . . . ."); *Monroe v. Steen*, 2009-Ohio-5163, ¶ 11 (9th Dist.) ("Whether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is *de novo*."); *with Abrams v. Abrams*, 2017-Ohio-4319, ¶ 31 (2d Dist.) ("We review rulings regarding hearsay under an abuse-of-discretion standard."). We apply the abuse of discretion standard. *Bishop v. Munson Transp., Inc.*, 109 Ohio App.3d 573, 579 (7th Dist.1996) ("The decision to admit a business record into evidence pursuant to Evid.R. 803(6) . . . will not be disturbed on appeal absent a clear showing of an abuse of discretion.").

**{¶84}** Ohio intermediate appellate courts that have considered the issue before us have universally concluded estimates offered to establish damages constitute hearsay. For instance, the Twelfth District opined where an appellant did not call the authors of the estimate as witnesses or anyone else who could authenticate the estimate, the magistrate correctly concluded that appellant's information regarding the repair estimate constituted inadmissible hearsay under Evid.R. 802. *Black v. Sakelios*, 2014-Ohio-2587, ¶ 31 (12th Dist.) (applying abuse of discretion standard), citing *Beck v. W. Chester Lawn & Garden*, 2013-Ohio-2276, ¶ 9 (12th Dist.); *Greig v. Wallick*, 2012-Ohio-77, ¶ 71 (5th Dist.) (applying abuse of discretion standard).

**{¶85}** Likewise, the Ninth District in *Kissel v. Gold*, 1990 WL 66921 (9th Dist. May 16, 1990) opined repair estimates are hearsay, but found nonetheless that their admission into evidence did not prejudice the defendant, based on Kissel's testimony regarding her damages during the jury trial. Specifically, the Ninth District opined:

Hearsay is defined in Evid.R. 801(C) as:

" . . . a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Unless the hearsay falls within one of the exceptions under Evid.R. 802 or 803, it is inadmissible.

Gold is correct in his assertion that exhibits eleven through fifteen are hearsay and, as such, should not have been admitted into evidence. However, we do not agree that the admissions were prejudicial to Gold.

Whether the trial court's error in admitting the exhibits was prejudicial is determined by other portions of the record. *The repair estimates were presented to the jury through the testimony of Kissel. Therefore, the repair estimates were already before the jury in the testimony heard*. Admission of the documents merely duplicated the testimony received during trial. As a result, we must determine whether the testimony regarding the repair estimates was properly received. If such testimony was properly received, then admission of the documents was not prejudicial error.

Evid.R. 701 provides that a lay witness may express an opinion in situations where those opinions are " . . . helpful to a clear understanding of his testimony or the determination of a fact in issue." Any objection to such evidence goes to its weight, not its admissibility.

In the instant case, Kissel's testimony on the estimates of repairs assisted the jury in determining the amount of damages. The testimony was properly received.  Admission of the documents on estimates of repairs was not prejudicial.

(Emphasis added) *Id.* at *1-2.

{¶86} We join the other Ohio appellate districts that have considered the issue and conclude estimates of repairs are hearsay, and therefore, the county court did not

abuse its discretion in refusing to consider Exhibit 8. However, Appellant testified she paid the amount reflected in Exhibit 8 under the heading "Receipt for Services" based upon her personal knowledge. To that extent, the Exhibit corroborates her testimony. We conclude she independently verified the paid damages in Exhibit 8. Further, Appellees did not contest this testimony or offer opposing testimony for the court to consider.

**{¶87}** When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984). Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus. *See also Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226 (1994).

**{¶88}** Appellant established $375 in damages through her testimony, which consists of the portion of the cost of Fair's repairs that had been completed as of the date of the bench trial. She testified, "[s]o his estimate is in there of things I've paid him for and things he still needs to do to repair the damage done." (Trial Tr., p. 82.) Therefore, Appellant's damages in the amount of $375 are not speculative as they are predicated upon completed repairs. Accordingly, while we find the county court did not abuse its discretion in concluding Exhibit 8 constitutes inadmissible hearsay, we find there exists competent, credible evidence of ascertainable damages in the amount of $375 in the record by Appellant's testimony that she paid costs summarized in Exhibit 8 under the heading "Receipt for Services".

**{¶89}** With respect to the remaining $1,978.84, Appellant argues the magistrate admitted Exhibit 8 into the record over the objection of counsel for Appellees, and the magistrate declined to sustain a directed verdict based on Exhibit 8. The foregoing argument ignores the magistrate's caveat that the admission of Exhibit 8 and the magistrate's refusal to sustain the motion for a directed verdict were both conditioned upon his belief that Appellant may not have proven ascertainable damages independent of Exhibit 8.

**{¶90}** " 'It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.' " *Givens v. Longwell*, 2024-Ohio-948, ¶ 34 (7th Dist.),

quoting *State ex rel. Neil v. French*, 2018-Ohio-2692. " 'Although a court may, in practice, grant a certain amount of latitude toward pro se litigants, the court cannot simply disregard the Rules of Civil Procedure in order to accommodate a party who fails to obtain counsel.' " *Collins Asset Group, LLC v. Davis*, 2024-Ohio-4857, ¶ 11 (7th Dist.), quoting *Pinnacle Credit Servs., LLC v. Kuzniak*, 2009-Ohio-1021, ¶ 30 (7th Dist.). "The rationale for this policy is that if the court treats pro se litigants differently, 'the court begins to depart from its duty of impartiality and prejudices the handling of the case as it relates to other litigants represented by counsel.' " *Pinnacle Credit Servs.* at ¶ 31, quoting *Karnofel v. Kmart Corp.*, 2007-Ohio-6939, ¶ 27 (11th Dist.). (Internal citations omitted.)

**{¶91}** The county court's decision therefore concluded Appellant failed to provide any testimony regarding damages. Such conclusion was error, in part, as noted above.

**{¶92}** Despite the magistrate's admonition regarding the admissibility of Exhibit 8, Appellant did not request a continuance to make her witnesses available to provide the testimony necessary to admit Exhibit 8 at trial. While Appellant has the right to represent herself, she is presumed to know the law and legal procedures and is bound by the result. We will not disregard the rules of evidence and provide preferential treatment to Appellant based on her pro se status. Moreover, while we understand Appellant's explanation for her failure to produce her witnesses at the bench trial, there were legal remedies available to her to secure their presence. Appellant was aware of the county court's subpoena power. She conceded at oral argument that she was told by the clerk that she need not issue subpoenas if her witnesses agreed to voluntarily appear at trial. Again, by law, pro se litigants are held to the same standard as litigants who are represented by counsel.

**{¶93}** Accordingly, we find the county court did not abuse its discretion when it determined Exhibit 8 is hearsay. However, based upon Appellant's personal knowledge testimony of payment for services rendered which was corroborated by that portion of Exhibit 8 under the heading "Receipt for Services", we conclude there was competent, credible evidence in the record to establish Appellant's damages in the amount of $375. Therefore, we find Appellant's third assignment of error as it relates to the county court's decision finding Exhibit 8 is hearsay to be without merit, but meritorious as it relates to other evidence of damages in the record.

Case No. 25 MA 0091

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT REMOVED DEFENDANT-APPELLEE JOHN TYGER FROM ALL RESPONSIBILITY IN THE INSTANT CASE NOW BEFORE THIS COURT ON APPEAL.**

{¶94} Because the maintenance of a tree on private property in an urban area is not an absolute nuisance, a plaintiff may not proceed merely upon strict liability, but, instead, must prove negligence. *Heckert v. Patrick*, 15 Ohio St.3d 402, 405 (1984). We recently summarized the elements of a negligence claim in *Girard Technologies Inc. v. Stiles*, 2025-Ohio-4869, as follows:

> "A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages." *Triad Hunter, LLC v. Eagle Natrium, LLC*, 2024-Ohio-5188, ¶ 22, 257 N.E.3d 982 (7th Dist.), citing *Anderson v. St. Francis-St. George Hosp.*, Inc., 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996).

> "Whether the defendant owes a duty to the plaintiff presents a legal question that depends upon the foreseeability of the plaintiff's injuries." [*Lagowski v. Shelly & Sands, Inc.*, 2015-Ohio-2685, ¶ 7 (7th Dist.), citing *Anderson*, 77 Ohio St.3d at 84] citing *Menifee v. Ohio Welding Products, [Inc.,]* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "An injury is foreseeable if a reasonably prudent person would have anticipated that any injury was likely to result from the performance or nonperformance of an act." *Id.*

> *Bacha v. Sam Pitzulo Homes & Remodeling, LLC*, 2019-Ohio-878, ¶ 15, 2019 WL 1223028 (7th Dist.).

*Girard Technologies. Inc.* at ¶ 47.

{¶95} More specifically, to recover upon a theory of negligence arising out of the falling of a tree, the evidence must establish the defendant had actual or constructive

notice of a patent danger that the tree would fall. *Heckert* at 405. If a tree falls, the tree owner is not liable to neighboring landowners in a negligence action if the tree owner lacked "actual or constructive notice of a patent danger that the tree would fall," because without such notice, the owner does not owe a duty of care to his neighbors. *Wertz v. Cooper*, 2006-Ohio-6844, ¶ 12 (4th Dist.); *see also Shoemaker v. Harris*, 1998 WL 879250, *2 (2nd Dist. Dec. 18, 1998).

**{¶96}** Appellant did not object to the magistrate's legal conclusion that Tyger did not have actual or constructive notice of the patent danger of the dead or dying trees. Civ.R. 53 governs proceedings before a magistrate and the county court's duties in accepting or rejecting a magistrate's decision. Parties have fourteen days from the issuance of a magistrate's decision to file specific objections with the county court. Civ.R. 53(E)(3)(b). When a party fails to file timely objections to a magistrate's decision, that party waives all but plain error on appeal. *In re E.K.*, 2017-Ohio-7709, ¶ 20 (7th Dist.); Civ.R. 53(D)(3)(b)(iv).

**{¶97}** " 'In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the *extremely rare case* involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Lopez v. Trinity Food Services Group*, 2023-Ohio-2943, ¶ 21 (7th Dist.), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997).

**{¶98}** Here, the county court's conclusion with respect to Tyger's liability is supported by the evidence. Although there was conflicting testimony regarding the authority of Keenan and Lewis to remove the trees without permission from Tyger, the magistrate obviously credited Tyger's testimony. Any weighing and credibility determinations are within the province of the fact-finder. *See State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶99}** Accordingly, we find no error, let alone plain error, based on the county court's entry of judgment in favor of Tyger on Appellant's negligence claim. Therefore, Appellant's fourth assignment of error has no merit.

## CONCLUSION

**{¶100}** For the foregoing reasons, the September 18, 2025 judgment entry of Mahoning County Court No. 2 (Boardman) regarding evidence of damages in the record is reversed in part, with respect to $375, based on Appellant's testimony, and affirmed in part, with respect to the remainder of her damages claim. This matter is remanded to the county court to enter judgment in favor of Appellant and against Keenan and Lewis, jointly and severally, in the amount of $375.

Robb, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the September 18, 2025 judgment entry regarding evidence of damages in the record is reversed in part, with respect to $375, based on Appellant's testimony, and affirmed in part, with respect to the remainder of her damages claim. We remand this matter to the Mahoning County Court No. 2 of Mahoning County, Ohio, to enter judgment in favor of Appellant and against Appellees Keenan and Lewis, jointly and severally, in the amount of $375. Costs to be taxed against Appellees Keenan and Lewis.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**